The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons have any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit. I must draw nigh and get their attention, for the Court is now sitting. God save the United States and this Honorable Court. I would like to be seated. All right, Mr. O'Meally, whenever you're ready. Thank you, Your Honor. May it please the Court, Edmund O'Meally, on behalf of the Board of Education of Charles County, Superintendent James Richmond, and Assistant Superintendents Keith Heddle and Charles Wineland. This is an interlocutory appeal under the Collateral Order Doctrine from the denial of the Board of Education's motion to dismiss on Eleventh Amendment grounds the class plaintiff's claims for back wages and liquidated damages under the Fair Labor Standards Act. The precise question for this Court today is whether Section 5-518 of the Maryland Courts and Judicial Proceedings Article operates as a waiver of the Board's sovereign immunity from damages claims under the Fair Labor Standards Act. We submit that it does not, and we would ask this Court to either reverse the decision below or certify the question to the Court of Appeals of Maryland. It is our position that given this Court's precedent of many years dating from Roland Electric Company versus Black, that Fair Labor Standards Act claims are contractual in nature rather than tort-like, and the Court of Appeals of Maryland's decision in Becker Industries versus Board of Education of Worcester County that Section 5-518 does not apply to contract-like claims such as the Fair Labor Standards Act claim that is now in this Court. Rather, we contend that if any waiver of the Board's sovereign immunity is applicable, it is that waiver found in State Government Article Section 12-201, and it is significant that that waiver of the Board's sovereign immunity for contract-like claims is a waiver of sovereign immunity, but it is not, by its very terms, a waiver of the Board's Eleventh Amendment immunity because that statute only applies as a waiver to claims brought in the courts of the State of Maryland. We would respectfully submit that there is no question that based upon a long line of cases, both in this Court, the U.S. District Court for the District of Maryland, and the Appellate Courts of Maryland, that the Board of Education... Does your case hinge on Becker? Our case does hinge on Becker, and in particular... If you didn't have Becker, do I take it you'd be arguing the point of Becker to try to make that distinction yourself? We would. You just said that the Court made it for you. Is that your argument? Well, that's correct, Your Honor. And I think that when the Court in Becker clarified its earlier ruling from less than two years before in Zimmer-Rubert, where they said that... Do you think they said, oops? Well, I don't know if it was oops, but they were saying that they were deciding that case, Zimmer-Rubert, which was a discrimination claim under the Age Discrimination Employment Act, in the context of what the Court described as a personal injury claim. And the Court said further that the interpretation of Section 5518 in Zimmer-Rubert was clearly in the context of tort or insurable claims, such as those for personal injury, and for claims arising from alleged employment law violations. And the Court there very, very clearly said that this is not a tort-like claim. I understand that, but that's pretty broad language in that earlier case, isn't it? The words any claim cannot reasonably be read to exclude certain categories of claims. I agree. That's what I'm talking about, the oops. It sounds to me like that's very broad language. Well, and I think that the Court did pull back from that any claim language. And when it said that they were deciding that earlier case in the context of a personal injury claim, And I think that following from that point, that we have a number of employment cases in Maryland based upon contracts that have been decided under 12-201 rather than Do you think it's clear enough or do you think we need to certify it? You gave us both options a moment ago. I think it's clear enough that the Court should reverse and send back. However, the option remains that since Your position is you think it's clear enough and you hope we agree with you on the reading of BECA. But if we don't agree with you, then you think certification is a nice alternative. Well, I would concede that point, Your Honor, that yes, I do have alternative arguments there. But in the context of contractual claims, I think the Court in BECA was clear on that point. The contract-like claims do fall under 12-201 rather than 5518. Why would the state legislature pass a statute that waives contract immunity only in state court but not in federal court? That doesn't make any sense to me at all. Is there some policy reason behind that or is it just weird language that they came up with? Your Honor, I would respectfully submit that it's really not weird language that the Court is protective of its agencies. It is one thing to waive, in a limited sense, the sovereign immunity of the state and its agencies, such as the Board of Education. It's quite another matter to waive the state's 11th Amendment immunity. And so here we have a situation where if the Court agrees with me that 12-201 applies, this is really an 11th Amendment issue. And so we would fall under the auspices of Seminole tribes and Alden v. Maine. And to the extent that there is a waiver, then that waiver could only be argued in a state court case. Couldn't you have a case that could be brought either in state or in federal court and it's waived in one court and not in the other in the same case? That makes no sense, does it? Well, no. I think that it does make sense when we consider our 11th Amendment jurisprudence and that claims can be brought against the state in its own courts, but not necessarily in federal court unless the consenting state and I would submit that Maryland is not a consenting state in contract-like claims. But based upon... I don't think Judge Faber is asking you whether or not a state could do it. He's just wondering why it seems odd they wouldn't do it. Well, I would submit that that is the policy prerogative of the General Assembly within the concepts of federalism. That the General Assembly, in its exercise of its authority, can choose to limit claims against the state and its agencies. I thought you were going to say, unlike you, Maryland General Assembly doesn't trust us 100%. Well, we could look at the Supreme Court's very recent decision in Coleman v. Court of Appeals of Maryland where the Supreme Court upheld the state's 11th Amendment and sovereign immunity in a claim against the Court of Appeals under the Family Medical Leave Act. The court was not a consenting state agency to that claim. Going back to this court's earliest decisions interpreting the Fair Labor Standards Act, in 1947, less than 10 years after the enactment of the Fair Labor Standards Act, this court in Roland Electric v. Black held that claims for wages and liquidated damages, such as we have in this case, under the Fair Labor Standards Act, quote, depend on the contracts between the parties which arose out of the relationship of employer and employee and their basis is not changed by the fact that the terms of employment... Tell me why it's clear to you we have jurisdiction. Excuse me, Your Honor? Tell me why it's clear to you that we have jurisdiction to hear this appeal at this point. The court has jurisdiction to hear this interlocutory appeal under the collateral order doctrine. The case law interpreting immunity arguments are clear that a state that has raised the 11th Amendment and its sovereign immunity in a trial court and is unsuccessful in the trial court has the right to take that immunity argument up as an interlocutory appeal. Just because if that right exists, it's the absolute right not to be sued in that form. That's correct, Your Honor. It's not just that we have immunity from damages, but we have immunity from being brought into the court. And so I would respectfully submit to sum up my argument that this court's precedent, not only in the Fourth Circuit that Fair Labor Standards Act claims for back wages and liquidated damages are contractual in nature. That was the holding of this court in 1947. It's the holding of many other federal appellate courts. I would cite to the court the Fifth Circuit decision in Walling v. Jacksonville Terminal where the Fifth Circuit ruled that, quote, wages are due according to principles of contract, not tort. Mr. Grimani, I'm not persuaded that BICA really reverses Zimmer-Rubert. Zimmer-Rubert was a big, long opinion on this one issue, and BICA just kind of dealt with it in a paragraph in passing. Can't you rationalize the two cases together without holding that BICA overcomes Zimmer-Rubert? I agree with you, Judge Faber. BECA does not overrule Zimmer-Rubert. Rather, it clarifies the extent of Zimmer-Rubert's broad language, any claim. And BECA essentially says any claim does not mean contract-like claims. It means personal injury, tort claims, insurable claims, and wage claims under the Fair Labor Standards Act are not tort claims. They are not personal injury. They are not insurable claims. They are, rather, contractual in nature, employer-employee claims for wages that are allegedly due based upon a violation of the contractual employment relationship. And that's why this court in Anderson v. Sara Lee held just recently, within the last several years, that contract claims are duplicative of Fair Labor Standards Act claims and thus are preempted. So the court below in this particular case did correctly dismiss the contract claims of the class appellees as being duplicative of the Fair Labor Standards Act. They are part and parcel. They are contractual in nature. And based upon BECA, they should be brought in state court under 12-201 of the state government article to the Annotated Code of Maryland rather than under 5-518 of the Courts and Judicial Proceedings article. That essentially is our position in this particular case, that we have two immunity waiver statutes in Maryland. One applies to contract-like claims. The other one applies to torts and insurable claims. This one falls under the category of contract-like claims and should be sent back or to the Court of Appeals of Maryland for it to interpret its own statutes to determine which of those two applies. I'll save the rest of my time for rebuttal. Thank you, Your Honor. Thank you. Conwell. Good morning, Your Honor. Scott Conwell on behalf of the plaintiffs, which now consist of some 30-some consenting employees under Section 216B of the Fair Labor Standards Act. I want to first address the fact that we're here in an interlocutory appeal and then address some of those issues and how BICA fits in with the rest of the cases. I believe that an important issue for all employees that the FLSA was expressly designed to protect back in the 1930s is, can school boards, of which there are dozens in a small state of Maryland, file as a matter of routine and strategy motions to dismiss, lose those motions to dismiss, file interlocutory appeals, delay a case by perhaps a year, no matter how many times Maryland's highest court, the Fourth Circuit, and federal district courts have ruled. And that's what's being done in this case, Your Honors. They would have you believe that because a court has ruled on the basis that any claim language encompasses, includes the FMLA, the ADA, and ADA-type claims, that somehow, because the FLSA- Are you arguing that we don't have jurisdiction? I believe that this court should rule that there should not be, as a matter of course- I'm not asking, my question is, are you asserting we do not have jurisdiction to hear this appeal? I believe that the cases show- I'm asking you, do you think we have jurisdiction to hear this appeal, yes or no? I believe that there's no case on point on that issue, Your Honor. My question is, do you think we have jurisdiction to hear this appeal, yes or no? I don't believe so. Then tell me why. And I believe that the reason is because the cases show that the reason for interlocutory appeals is affording, usually individuals, a right to not be brought- to have a suit brought before them at all. And in other cases, it's the state asserting that right. In no case do we have a school board entity, in this case, filing routine appeals as a matter of course, when the settled law is there. Whenever the Fourth Circuit rules, when all of the authority, we're talking the federal authority, we're talking the highest- Is your argument that it's the wrong entity? If the state were in the situation, the state could take an interlocutory appeal, but the school board can't? If the state-  Well, if the state is asserting some right that hasn't been contested and hasn't been decided by the Fourth Circuit, hasn't been decided by the highest court in the state- You said the BECA issue that they're asserting has been decided? I believe, yes. It was decided. How was it decided? BECA is actually a carve-out from Section 518. That's your interpretation of what the law says, correct? It's not just my interpretation. It's what the case is. I mean, this is your interpretation for your basis for saying there's no jurisdiction. Do I understand your argument? Is your argument, it's clear to me, Your Honor, Honors, that BECA doesn't change the general rule. So, therefore, that issue can't even be appealed. The issue that I believe is when, at what point does the settled law- No, wait one second. Do I understand your argument correctly? That your argument is that BECA doesn't do anything in any way to affect the rule previously announced. So, therefore, there is no basis to bring such an appeal, that it does allow immunity. That's correct, Your Honor. Well, isn't that just based on your argument about what the final determination is? Well, the rule is that where the case has the issue of an interlocutor appeal and the issue of a statutory waiver is where the state's highest court- On a question of appeal, don't we first have to decide if we can even hear the case before we can decide whether or not you are right on your assertion of what the case law says? Well, I believe that that's the case, Your Honor. We would have jurisdiction to see if your view of the case law was right, wouldn't we? I don't want to belabor that, but I don't really understand that argument. What you want to do is say you can't hear the case because if you were to hear it on the substance, I would be right. That's your argument, isn't it? Well, I believe that in these cases, what we have is the highest court in the state and the Fourth Circuit have both ruled on this issue. What it sounds like to me is you're saying this court has no jurisdiction because you should win on the merits. Well, the contrary argument is also not available, meaning that any time any state agency, no matter how so construed, whether it's the commissioner, whether it's the Board of Education, can automatically do an interlocutory appeal on any denial of any motion to dismiss. Well, maybe they can. Who decides whether or not we take an interlocutory appeal? Well, it's not the school board, is it? It's us. I don't understand. I think, as I was trying to ask the question, Judge Traxler has absolutely captured your argument, which, quite frankly, I don't find appealing. The question was appealing. The answer wasn't appealing. But you now seem to be saying, as I suggested, it's the wrong entity. We don't know if it's the wrong entity or not. Maybe it is. Are you asserting that the school authority has no right to act in court and ask for an appeal? Well, they're asserting that they have an automatic right for an appeal, and they've done so in this particular instance, Your Honors. What is automatic? What do you mean automatic? Wait. You mean under their authority, they automatically ask for it, or under our authority, it's automatically granted? Well, that's why we're here today, Your Honor. Two different questions, though. The procedure that's involved here, they file their notice of interlocutory appeal. It comes before us, and we're here briefing the issue for a year. You know what? I'm not surprised that you're here and you've briefed the issue. I've read your briefs. But my question is, so you assert we don't have jurisdiction here in this case? I would argue that you should not, okay? I didn't ask whether we should or should not. The question is, you think we don't have authority. By the way, that's fine. You don't insult us if you say that. But your position is we shouldn't be here in this field, right? It is my opinion. Okay, fine. May I suggest you move on now? I would like to. If we did have jurisdiction, make that argument. And I want to focus on the distinction. BICA was a carve-out. BICA was the need for the legislature to expressly have a carve-out for contract issues that involved a written contract. What happened in BICA is BICA got a judgment against the board for some a million-plus dollars. What they wanted to do was reduce that to $100,000. Well, the state or its agencies wouldn't be able to enter into any contracts with anyone if every time a state could unilaterally breach its contracts and be limited to $100,000 damages that would be in the Section 518. I'm sorry to interrupt you. Do you think that FLSA overtime claims are the type of claims that would be covered by comprehensive liability insurance? I have no idea, Your Honor. Well, didn't BICA tie this particular section to the insurance coverage section? No, it didn't. No, it didn't. It briefly discussed 518. 518-105 of the education article of the Maryland Code. It briefly addressed 518 and expressed. I'm talking about the Maryland Court of Special Appeals. I'm sorry. I'm talking about the Maryland Court of Special Appeals. And BICA, didn't it indicate that Section 518 was tied to the requirements of 4-105 of the education article which requires county boards to carry comprehensive liability insurance? Well, the Court of Special Appeals in BICA was, that case was partly overruled and it was the full ruling. I don't have it before me. The Court of Special Appeals ruling was replaced by the Court of Appeals ruling. And it was partly overruled and to the extent that it was affirmed, it was on the basis that it was partly overruled. Let's see. I would have to go back. It was partly overruled. I don't want to focus on. Don't let me bog you down. Yeah. Go ahead with the rest of your question. But the Court in BICA expressly discussed even an inclusive language of employment law violations. What we have here is the language of Section 518 is the all claim, any claim language is inclusive language. It includes these things. It includes employment law violations. It includes these. FLSA is the oldest of employment law violations. It's you failed to pay wages due in owing and therefore you need to pay those wages due in owing. BICA itself was a 12-201A carve out that was expressly done by the legislature so the state could properly enter into contracts with people and companies. And what it did was it removed the limitation. So what we have here is under 12-201 when there's a written contract, when it was signed by a superintendent or the highest person in the agency, then and only then you can sue on the full written contract. You're not limited by the $100,000 language. That's what BICA held. It in no way limited the holding in Zimmer Rupert. And there's nothing in here to say that it would limit that. What it did was it said that, oh, yeah, and the whoops language is really whoops. There is an express legislative carve out for 12-201 type cases where it's very clear that there's a written contract. And that's the whoops language. Oh, yeah, the any language, you are not limited by the $100,000 limitation that's in the 518 in Section 518. So what we have here is there's nothing in. Explain that to me again now. The Zimmer court said the words any claim cannot reasonably be read to exclude certain categories of claims. That's what the court said. Two years later they say we did not imply in that case Zimmer. That that language, you know, it says our interpretation of 518C was clearly in the context of a tort or insurable claim as those personal injury and claims for rising alleged employment law violations. We did not imply in that case above Zimmer applies to contract claims. So it does indicate that BICA cuts back in some way on Zimmer, don't you think? Well, first, to the extent that it's. Answer my question first and you may explain it. You don't think that language indicates that they are cutting back on that the way that language could be read in Zimmer? No, not at all. First of all, and second of all, in the cases that apply, we have BICA is a contract claim and we have with a contracting company with the board. And then we have in Zimmer Rupert, that's an employment law violation. That has nothing to do with my question. The court in Zimmer said the word any claims, any claims cannot reasonably be read to exclude certain categories of claims. It looks like then when they say we did not imply that that applies to contract claims. So a contract claim is a claim, isn't it? A contract claim is a claim. So then it appears to be that BICA is retracting or retrenching from any claim language, doesn't it? I do believe that, just like I said. But it's specific because the whoops language was, oh, that other claim dealt with this. So your answer to me first should have been it does look like it cuts back, but in the context it doesn't cut back in a way that affects you. Is that your argument? Yes, and I think I took it a little too far. Yes, I believe that it cuts back the section of 518, and it does so for the reasons that the legislature put in for 12-201A, which is the larger contract claim that we can't limit this to $100,000. So is your argument sort of like this? We need to be careful. One should be careful of reading the Zimmer case too broadly, the any claim language. But then one also needs to be careful of reading the BICA case too broadly. I would argue that, and I would also argue that the BICA case expressly went on the basis of a legislature. There was no common law basis. There was no other interpretation of that other than, whoops, we forgot about section 12-201A that the legislature itself of Maryland put in. And so you had to read those and contrast those two statutes together. Couldn't you read BICA as just considering how the two statutes fit together and the effect of 518 on 201A? I'm looking at the language from BICA. The court of special appeals conclusion, that's CJP, and they're referring to the Zimmer-Rubert case, section 5518 does not place limitations on the waiver of sovereign immunity under SG-12-201A. Aren't they only looking at the impact of the, they're saying that 5518 doesn't have an impact on 12-201. Doesn't that leave open the possibility that we can read 518 literally and hold that it's not restricted by the holding in BICA? That was a very inarticulate question, Mr. I believe that that is the argument I'm trying to make. And I follow the question beautifully. I believe that that is the argument I'm trying to make. The BICA itself was saying that 12-201 applies, and therefore 518 doesn't apply. But 518 still says what 518 says, and that, it read literally, a county board of education may not raise the defense of sovereign immunity to any claims. And I believe that the legislature itself, the Maryland legislature, has enacted two statutes that obviously if you read any claim language as broad as it is, then the legislature itself enacted two statutes that conflicted in this particular BICA case. And as far as I know, this is the only case to come up with such a thing, such a ruling. And so in this case, those statutes conflicted. And the court then came in and said 12-201 applies in this particular case, and Section 518 does not apply in this particular case. And that's where the statute comes in, where there's an express written contract signed by the head of that jurisdiction. And I don't have anything further, Your Honors. Okay, thank you. Mr. O'Mealy, you have some time reserved. Thank you, Your Honor. If I could, I'd like to go back to the earlier questions that Judge Shedd and then Judge Traxler were asking counsel with respect to the jurisdiction over the interlocutory appeal, and I would refer the court to page 2 of our reply brief where we cite at length from the Supreme Court's decision in Puerto Rico, Aqueduct v. Metcalf, where the court said that denials of states and state entities' claims to Eleventh Amendment immunity purport to be conclusive determinations that they have no right to be sued in federal court, and that this is a proper exercise of the court's jurisdiction to entertain an interlocutory appeal. I think that's exactly what we have in this particular case, and that the court does have the jurisdiction to decide the question before it. What we have, though, is ultimately a question of two distinct statutes in Maryland involving the waiver of state entities' sovereign immunity, and Becca provides us with the clarification on how those two statutes are to be construed. In the context of claims of personal injury, claims for tort and other insurable claims, 5518 applies. In the case of contract claims, 12-201 applies. It is our position very strongly that a claim for back wages based upon this court's precedent is akin to a claim for a breach of contract. It is contractual in nature, and it is most definitely not tort-like, nor is it insurable. Which law determines whether it's more akin to a tort or a contract? Well, that, Your Honor, I would submit is a very interesting question. I think the determination of whether the Fair Labor Standards Act is more akin to tort or contract is a federal question for the federal court. The interpretation of the Maryland immunity statutes, I believe that the court in It's more likely state law. It's a state law question. So your argument is, looking at federal law, this type of claim is more like a contract claim. It is, Your Honor. Then looking at state law, looking at the waiver law, you think that throws it into a category of a contract claim that it's not an insurable or tort claim that's covered by the general statute. Indeed. That is exactly my point. And very clearly, this is not a tort. And very clearly, it's not insurable. Insurance companies do not issue comprehensive insurance policies to cover wage claims. And I would cite to the court's recent decision in Republic Franklin Insurance Company versus Albemarle County. Now, interestingly, that was a coverage case. It was not a Fair Labor Standards Act case when it came up to the Court of Appeals. And the court said. But you think the basic type of some types of employment law violations are more like tort violations that could be covered. Do you think that? Concededly, yes. ADEA claims, ADA claims. And I think the Court of Appeals of Maryland in BECA very clearly indicated where it was coming from when it said that those claims were in the context of a claim for personal injury. Now, I think the Internal Revenue Service would beg to differ that employment discrimination claims are not treated necessarily as personal injury claims. Certainly employment discrimination damages and settlements are not excluded from wages for purposes of the Internal Revenue Code. But be that as it may, I think where the Court of Appeals of Maryland was coming from, that these are akin to a personal injury claim. A discrimination claim is more tort-like than contractual. A wage claim, on the other hand, is more contractual than tort-like. That is the sum and substance of our position in this case. I think it's an important case. And I think that it bodes in our favor for either reversal or certification to the Court of Appeals of Maryland as to which of its two statutes would be applicable to this case. Thank you. Thank you, Mr. O'Meally. We'll come down to Greek Council and then go into our next case.
judges: William B. Traxler, Jr., Dennis W. Shedd, David A. Faber